May it please the Court, I represent Jonathan Deutsch on appeal from his convictions for production of child pornography. The evidence in this case showed that Deutsch received child pornography from four minor girls with whom he chatted online, pictures of themselves that they sent him. But it was insufficient to convict Deutsch of the only crime charge that he persuaded or induced them to engage in sexually explicit conduct for the purpose of producing a depiction of that conduct. The pictures that the girls sent him were either not proven to have been taken, produced, but only sent in response to a request for a photo, or not proven to have been produced or sent in response to any request, let alone inducement from Deutsch, because they were either sent spontaneously, not in response to a request for a picture, or sent in response to a request for a picture, but not for a sexually explicit picture. I'd like to first address the Montana counts, because they're insufficient on the most basic level. Montana did not testify, and there was no evidence that the nude picture of herself that she sent Deutsch was taken or produced for him at all. It could just as well have been taken before she ever chatted with Deutsch. Broxmeyer holds that without evidence as to when she took the photo, the jury was left to speculate or guess, and that that cannot establish production. Only receipt. But wasn't the photo sent in response to a, in a chain of chats, I guess? It was sent in response, in a chain of chats, yes. And it was sent in response to a request, do you have a picture, a full-body picture? So is your argument, then, that the possibility that it was a reused but previously taken picture makes it unreasonable as a matter of law for a jury to infer that that was a response? Yes. That is my argument, Your Honor. And it's, and Broxmeyer is controlling on this point. The same thing happened in Broxmeyer, where... Broxmeyer, there was no request and receipt sequence, was there? I thought there was just free-floating photos without a request tied to them. No, there were several requests for photos throughout their relationship. It was entirely sexual. There was a lot of sex talk. There were a lot of photos taken, passed back and forth, and there were multiple requests for photos. But there was no evidence. The problem was that there was no evidence that there was anything other than a request to send that this photo, these particular two photos at issue in Broxmeyer, were actually produced in response to the chats with the defendant. I guess that's what I'm asking. I thought in Broxmeyer it was just, there was a relationship going on and there were photos being sent, not necessarily in response to a request. Whereas here, you have a request, was this the one with a one-minute delay, and then a photo that sent response. And that seems to me different in that a jury could infer from that sequence that there is a cause of it. Well, in Broxmeyer, this is what the court said. The district court cited evidence that Broxmeyer persuaded, induced, or enticed A.W. to send sexually explicit pictures of herself to him. As we have explained, however, 2251A applies only to the production of child pornography. Distribution is prescribed by 2252, which was not charged. Accordingly, a 2251A conviction cannot be premised on the fact that Broxmeyer persuaded, induced, or enticed A.W. to send him her pornographic self-portraits. Sending is not production. So even if he asked for a pornographic picture, which we also contest, he didn't ask for production and there's no evidence that she actually did produce that photo. She sent it to him. In Broxmeyer, then, in your view, what did your client have to say to make it sufficiently clear for a jury to infer that it was a request for something to be made? Well, there would have to have been some evidence that the photo was taken at that time. Some of the other witnesses testified. They testified. This witness did not testify. So all there was was the chat. And the government produced no evidence, neither metadata nor anything else, to show when this photo was actually taken as opposed to sent. So that's what would have been required. Or testimony that it was taken in response to that request. I took it that day in response to that request. So absent that, I guess your argument is just impremisively speculative for a jury to have a reasonable doubt that that photo was produced in response to his request rather than sent in response to his request. Exactly. That is our argument. Can I ask, since we're talking about Montana, and I'm sorry to sort of ask you a question that I fully acknowledge is not within the four corners of the briefing here, but can somebody be convicted both of an attempt and of a substantive crime for the exact same act? Yes, Your Honor. So the attempt doesn't emerge as not multiplicitous? I don't believe so, Your Honor. And they were charged separately in this case, the attempt and the substantive. So when the government argues with respect to Montana, describes this exchange and says when he asked her for a picture, that was the basis for the attempt charge, and then because she sent the picture, that's the basis for the substantive charge. That's not — that doesn't create a duplicitous conviction in your view? I don't think it creates a problem as long as they're not consecutive sentences imposed. I see. Right. That's my — that's my understanding. Thank you. So even with respect to the attempt charge with respect to Montana, also the evidence did not prove attempt because Deutsch never asked her to take any photo, only to send him one. He said, do you have a full body pic? Do you have one? Not please take me one. And he never asked for a nude photo, only for a full body picture of my — my girlfriend after she had sent him a series of her — of head shots. There's nothing — In the context of just an overtly sexual conversation, what — what is required in your view in the request to then constitute an attempt? To like, please take me a — take me a picture of this or do this and take a photo? So it has to specify this sexual explicit conduct in your view? Yes. Because — And that it's new, I guess. Right. And like, there's no doubt that the crimes were committed here, but they weren't charged. The government charged him only with the 15-year mandatory minimum production count when it could have charged him with receipt of child pornography. And then he would still be guilty of something with respect to Montana. Well, but you know, for example, you have the testimony of Kira, who said that she understood that he was — what he was asking for. Well, that — that was her view, that he was asking for — for that. But — So, I mean, I don't think his language has to be so specific, Ms. Cassidy, as you seem to indicate. I mean, he's careful. The language is carefully phrased here. And he — he talks about some of — I really don't want to get into too much language here, but he talks about the women — the young ladies looking slutty, stuff like that, and really kind of liking that. And, what have you got for me? I mean, I think you have to be an idiot not to know what he's asking for. Well, for example — They certainly understood that — she said, this is a 14-year-old girl, understanding that she understood what he was looking for. And — Cheer him up. Cheer him up. Even if it's true that he was looking for nude pictures, he didn't ask her to take them. To send is not the same as asking for production. Production is a different offense from just asking for child pornography. On February 17th, when she sent him — Kira sent Deutch a nude photo when he asked her to cheer him up, he said, keep going. And she said, that's all I got. She was obviously not producing photos, but sending what she had. He never asked her to take one. That was charged as attempted production, but he never asked her, why don't you just take me a photo? You have a phone. He never asked for that. I'm wondering whether, when we sort of focus in on the very specific words of each conversation, whether we're getting too into the trees and missing the forest, isn't the purpose of this whole ruse that he's creating to get them to send and or generate and send photos? Well, no. In a word, I mean, if you look at all of the chats, and I hate to ask you to do it, because they are disgusting. It's a lot of disgusting sex talk. And what he really wanted to do was talk more than get any pictures. Many of these pictures were sent spontaneously. He was not so much interested in pictures except for pictures in leather, which were not nude pictures. He was interested in leather and he was interested in urine, weird things like that. But he was mainly interested in talking about sex. In fact, when he said that Deutch asked her to cheer him up, that — when he asked her, you can cheer me up, and she sent him photos and said, that's all I got. He said, well, I'm not talking about photos. And she said, I don't have videos either. And he said, I'm not talking about that either. Well, what are you talking about? Just talk. I mean, if you look at the whole context, what he wanted to do was talk really dirty with minor girls. I think it's clear his intent was broader, quite broad, and encompassed a lot of things like what you just described. But that doesn't mean it didn't include a specific intent for these young ladies to produce pictures of sexually explicit content. Well, just because it doesn't mean that it didn't doesn't mean that the evidence was sufficient to prove that it did. I mean, there's a — the government had the burden of proving beyond a reasonable doubt that he induced or enticed these girls to produce child pornography. That requires specific elements. This is — this — and at least with respect to the Montana and we argue with respect to the Kira counts, it's — the evidence was grossly insufficient under Brocksmeier to prove these counts. Well, you know, I have a little familiarity with Brocksmeier. I have to try to work my mind back through it because I had a disagreement with Judge Jacobs on another side of this. But in that, there were two specific photographs that were in question. And there wasn't any proof there that he had encouraged her to take those two photographs. He encouraged her to take other photographs. But the two that he was charged with, there was a hole in the evidence, as I recall. So I'm not so certain, Ms. Cassidy, that Brocksmeier cast as long a shadow as you wanted to do. Well, the hole in the evidence that was discussed by the Court was the — the lack of evidence of when the photos were taken. Right. The government presented no evidence bearing on when the photos were taken. Without that, it was all speculation. And then second, just because they proved — because the district court concluded that they did prove that she sent — he asked her to send him photos. I understand. I remember the case well, Ms. Cassidy. Right. Okay? So — But the fact that she sent photos that she had didn't mean that she'd taken them. But these are — this is a little bit different case. This is contemporaneous conversation in which, in response to — as the conversation moves on, all of a sudden photographs start showing up, and at least one or two of the girls say, I knew what he wanted. Well, those were those counts. With respect to the counts where — Okay. I don't have — So you understand, then, that your argument doesn't reach all of these counts? We don't have the strongest argument on every count. Some counts are stronger than others. We admit that. I've known you a long time, Ms. Cassidy. That's — I'm not calling that a concession. I never would. But if this count — if this court vacates any counts, the case needs to be remanded for re-sentencing. Yes, I understand. Thank you. Thank you, counsel. You've reserved a few minutes for rebuttal. We'll hear from the government. Thank you. Yes, we would. Thank you. May it please the Court, my name is Rachel Shanus. I'm an assistant United States attorney in the Eastern District of New York. The defendant raises four challenges on this appeal, and I'll start with the one that was discussed initially, the first point, which relates to sufficiency of the evidence at trial. There was ample evidence for a jury to find the defendant sexually exploited and attempted to sexually exploit children. That evidence includes the graphic and disturbing communications between the defendant and these children. It includes his searches, seeking out particularly vulnerable children who would be more susceptible to his advances. And it includes the testimony of three of those victims who testified in no uncertain terms that they created these sexually explicit images for the defendant. Right. So, I think it's not a surprise that the argument started with Montana because I can see that there is testimony in the record from the other girls saying this was produced for him. There's nothing with Montana. There's no metadata on the photo itself from which we can infer that it was produced after they began their conversations even if it wasn't the very moment that he asked. Is that too big a leap to ask a jury to take? No, Your Honor, and I disagree that there was no evidence that she produced this for him. I think, as the Court noted, this was in a sequence of chat messages where they were discussing increasingly sexual topics. The defendant asked for a picture, and he was expressing what he wanted. He wanted a full-body picture of this child. I realize the Court does not have the images themselves, and I'm happy to provide them if they are needed. But what this picture depicted was exactly what the defendant asked for. It is a head-to-toe, fully nude picture of this 10-year-old child leaning into the camera and cuffing her chest area. It's very clearly sexually explicit, and it's very clearly exactly what the defendant asked for. So, the fact that the picture was sent was so closely consonant with what he had requested is the basis from which a jury could infer that it was produced in response to his request? Yes, that's one of the bases. I also think that the fact that this is a 10-year-old child, there's no reason to believe that this child has laying around sexually explicit material herself. So, that's another... Some of these kids seem to have a meaning. Sure. But, yes, the fact that the picture is exactly what he asked for is a sufficient basis for the jury to conclude that she produced it in response to his request. So, your friend talks a lot about Brock's Meyer and, I guess, causation here. What's your response to that? It seems to require some evidence that at least sequencing, if not more. Sure. So, first of all, with respect to the substantive counts for Octavia, Kyra, and Emma, that issue is addressed squarely by the victim's testimony. Every single one of those victims said... Yeah, let's focus on Montana. So, with Montana, I think the chronology of it is established by the fact that she created what he asked for. So, you know, he asked for a full-body picture. She provided him with a full-body picture. That suggests that she created it in response to what he was asking for. What suggests that? The fact that what she provided him is precisely what he asked for. So, you know, if he asked for a full-body picture and she provided something different, you know, you might have a little bit more difficulty. But here, she produced what he asked her to produce, a full-body picture. And I think in Brock's Meyer, you know, the court said that there was nothing to tie Brock's Meyer to the photos that were produced and that there was no evidence that Brock's Meyer inspired them. And here, I think the fact that she produced exactly what he was requesting suggests that he did inspire them and that she produced it in response to his request. If we were to... If that were the hook... I'm just thinking through the logistics of this. If that were the hook, it seems to me the picture would be an important thing to see. Work with a rationale for drawing that inference. Understood, Your Honor. And we're happy to provide that to the court. We can have an agent bring over a disc and show the court that image, if that would be helpful. Thank you. Can I shift a little bit to the expansive condition of supervisory needs? We've had a series of cases in the last... even that I've been on, of late, with this extremely expansive digital monitoring, anything and everything, maybe some GPS monitoring, et cetera. And we've been sending those back saying, we haven't, to my knowledge, really grappled with how far you can go because so far they've been hanging up on the process issue of absence of explanation. Am I missing something? Is the only explanation that I see here for this quite expansive condition that I think isn't even tied to a reasonable suspicion is something to be expected that goes with the territory with this kind of charge. Is there something more tailored that I've missed? So the judge does not express in stating his basis beyond that. But I think that it is self-evident from the record why these conditions are important and why particularly electronic monitoring is important. That might get you to relate it to, right? But we have to also conclude that these are... they're no broader than necessary to accomplish the reasonable purpose. And I guess that's the place where I'm a little bit hung up. Have we ever approved a condition that has neither a reasonable suspicion requirement nor a third-party monitor limitation? In other words, unrestrained monitoring by the government without a reasonable suspicion requirement of any and all digital media. So I'm not sure if it's ever been approved. I do recognize that there have been recent cases that have taken issue with those types of conditions. Here, first of all, the government... not the government, the defendant... our initial argument is the defendant waived an objection to this when they affirmatively said they had no concerns about these conditions. It also is a bit premature to be dealing with sort of what the appropriate monitoring conditions are. The reality is the defendant has been sentenced to 20 years in custody. Even if this court were to remand it and he was to be resentenced, he would be facing a minimum of 15 years in custody. So what technology is going to look like in 20 years is something that none of us can know. But I think we can all speculate pretty confidently that it's going to be very different than what technology looks like today. And I suspect the same is true with respect to the monitoring techniques. And so... The relevance of that... that probably doesn't change anything with respect to the relatedness analysis. But I guess the theory is whether it's broader than reasonably necessary to accomplish the legitimate purposes is something that we would have to evaluate in the context of the available technology. Is that... Yes, I think so, Your Honor. And essentially just the argument being that this is just not really ripe for review at this point given the fact that we don't really know what we're talking about in terms of technology. Am I right, though, that in the Coons case we specifically said that this limiting to one Internet-capable device and then deferring to the probation to decide whether you get more of that was an unlawful delegation regardless? I mean, is there an argument against this finding that? No. So I do agree that Coons is controlling in that regard. What I would say is that, again, whether one device is excessively limiting is something that's going to be a question of how people use technology in 20 years. And so I don't think now is the time to make that assessment. But regardless, in Coons they didn't remand it. They just said they were interpreting that provision to determine that the probation office was not allowed to make that assessment on their own. It was something the court would have to determine. So it is true that Coons says that that authority can't be delegated. Just for that issue, we could just essentially reinterpret the form? Yeah. Yes, that's exactly what the court did in Coons. Thank you. Are there any more questions on this particular issue? If not, I'm happy to turn to the second point which relates to the opening remarks by the court or answer any other questions the court has. Well, yeah. I guess, unless my colleagues have questions, I'd rather spend a little time on the there's so much literature out there that tells us how difficult it is. Where is this literature? And where do I look to see this sort of scientific consensus that's so strong that we don't actually need evidence in the record or anything? Sure. So, as is made clear from the record, the court was not expressed in terms of what literature it was relying on. We don't disagree with that. I think the defense counsel did respond indicating that they understood sort of generally what the court was talking about and took the opportunity to distinguish this case from the concerns about recidivism in literature in general relating to sex abuse cases and recidivism. There is also... Right, but the fact that the response there suggests the defendants say no, the literature that I'm assuming you're relying on involves actual predators who have physical engagement with their victims of their predation which is distinct from this scenario. And so, I don't take that exchange as validating the notion that everybody agrees that there's literature out there that supports the district court's analysis here. No, but there is second circuit authority that talks about concerns regarding recidivism in sex abuse cases. In one of the cases cited in the briefs, Lifshitz, which is 369 F. 3rd 173, it talks about the high rate of recidivism among sex offenders. So, I don't think conceptually the idea that there are concerns about recidivism among sex offenders is something that's difficult to understand or appreciate. What if the actual data is contrary to that? In other words, what if there's this conventional wisdom that gets cited by judges but isn't in fact supported by the science? What if the recidivism rate of offenders in this category, and I don't want to be narrower than sex offenders because that actually encompasses a really wide range of behavior. What if the data actually tells us that's dead wrong? Sure. So, I think the response to that with respect to this particular circumstance is that to the extent that the court finds that this needs to be remanded for resentencing, it should be limited to the question of the supervised release. The court was very clear about its basis for sentencing the defendant to a 20-year term of incarceration and it was not based, he didn't discuss the literature in connection with that. What he talked about was the severity of the conduct, the very disturbing nature of the testimony. He talked about the fact that the defendant was a teacher. And so, he was very focused on that, about the conduct the defendant engaged in and how extreme and disturbing it was when he determined the 20-year incarcerator sentence. He did rely on literature, it appears, in determining the supervised release term. But, again, I think there was a bit of a, he was talking about what it suggests or that it was debatable whether or not someone would have issues relating to recidivism. I don't think that the court necessarily came to a firm conclusion about what the literature indicated or what he believed even in terms of recidivism. But, again, I would say that to the extent there is remand as appropriate it should be limited to the supervised release term. Thank you. Thank you, counsel. Thank you. We'll hear about all of them. I'll start backwards from the sentencing points just discussed. Okay, if you look at the sentencing transcript there's no doubt that the judge relied on his view that someone like Deutsch was afflicted for life and could never really get rid of it. It was not just a general idea that sex offenders might be more likely to recidivate which also there is no support for. In fact, we cited in response to Judge Robinson's question we cited a couple of studies in our brief showing that there is no like further like more likelihood of recidivism among sex offenders. This wasn't objected to at the time? It was objected to in the sense that defense counsel said, no, Your Honor, I think I know the studies you're referring to and they don't refer to this type of offender. They refer to a hands-on offender. So that was an objection to his theory. So it was objected to. And it's clear that he relied on that for his sentence his 20-year sentence not only the lifetime supervised relief which is extraordinary and far beyond the probation department's recommendation of five years of supervised relief. He's because the defense counsel had a very strong argument that Mr. Deutsch had already begun well into his rehabilitation had learned I can't hear you. Sorry. I think this may be higher. Sorry. That's all right. Deutsch's counsel had a very strong argument that Deutsch in particular as an individual did not need further deterrence than the 15-year mandatory minimum because he had already well started in three years including detention at the MDC and two years of home detention on his rehabilitation and was undergoing extraordinary rehabilitation was very attentive to his therapy had been helping inmates in the MDC with their legal cases teaching them GED lessons and that he had gotten his wake-up call and was well aware that this was terrible he was very remorseful and he was never going to do this again. This happened over a four-month period in his life where he was having mental problems that were untreated. In response to that the court cited this literature out there and so it was clear that the court the court's pushback on the 15 years was enough for deterrence was those studies and then he cited it again in relation to the lifetime supervised release. Now with respect to the overly broad search condition as Judge Robinson points out there have been a slew of cases recently holding that for such an extremely broad search condition as this and maybe it's not even legal to have GPS monitoring for life which this includes that there has to be very individualized justification for that that there has to be a detailed explanation on the record individualized reasons for why this particular defendant not just the nature of the case but this particular defendant requires this kind of extraordinary surveillance basically lifetime surveillance of every single thing that he does so this clearly needs to be remanded on that ground as well because there was no there was no reason at all just this this goes with the territory he said with this kind of case that was the only reason and just recently in Olivares this court reversed for imposition of a search condition I don't think even as broad as this one on the ground that it was just tied to the nature of the case so that cannot stand and then just briefly just on Montana in response to Judge Robinson's question about you know could she have had this on her phone yes she could have the other some of the other defendants it was either Kira or Octavia or both testified that some of the photos they sent the nude photos of themselves were already on their phone they already had them and they sent them and then others they produced so yes these girls were sent pictures with alacrity I'm not saying it's their fault it's really too bad what happened here but they were doing this they were in chat rooms I love daddy and things like that they were they had photos they were engaging with people like this online so there's no evidence just from what happened here without any testimony from Montana or any metadata that this photo was not just on her phone that it was actually produced in this conversation